UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60685-CIV-GOLD/MCALILEY

TIRAMISU INTERNATIONAL LLC,

     Plaintiff,

v.

CLEVER IMPORTS LLC,

     Defendant.

_____/

**REPORT AND RECOMMENDATION GRANTING IN PART
PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION, DAMAGES,
AND ATTORNEYS' FEES AND COSTS**

     Plaintiff, Tiramisu International, LLC ("Tiramisu"), has filed a Motion seeking permanent injunctive relief against Defendant, Clever Imports, LLC ("Clever Imports"), money damages, and attorneys' fees and costs [DE 51]. For the reasons stated below, this Court recommends that Tiramisu's Motion be granted in part and denied in part.

## I.  BACKGROUND

     Tiramisu is the owner of the "Tiramisu" trademark for liquors, United States Registration No. 1,623,937.  (*See* Complaint ("*Compl.*") [DE 1] at ¶ 7).  Clever Imports began selling a brand of imported liquor carrying a similar mark, "Europa Tiramisu."  (*See id.* at ¶ 8).  When it became aware of the similar mark, Tiramisu sent Clever Imports a cease and desist letter, stating that Clever Imports was infringing on Tiramisu's registered trademark.  (*See id.* at ¶ 9).  Tiramisu demanded that Clever Imports: (1) stop selling Europa

Tiramisu liquors; (2) provide Tiramisu with the name of the manufacturer of Europa Tiramisu; (3) either destroy or return to the manufacturer any bottles of Europa Tiramisu in its inventory; and (4) provide Tiramisu with an accounting of all Europa Tiramisu liquor sold by Clever Imports. (*See id*. at ¶ 10). Clever Imports did not agree to any of Tiramisu's demands. (*See id*. at ¶ 11). Tiramisu sent additional demand setters, but Clever Imports refused to comply. (*See id*. at ¶ 13).

Tiramisu filed suit against Clever Imports on May 8, 2008, and Clever Imports filed a Motion to Dismiss the Complaint. (*See* Motion to Dismiss [DE 7]). The Honorable Alan S. Gold denied the Motion to Dismiss on August 21, 2008. (*See* Order Denying Motion to Dismiss [DE 15]). Following the denial of the motion to dismiss, the parties engaged in discovery. Tiramisu was not satisfied with the responses provided by Clever Imports, and filed a Motion to Compel proper responses to Tiramisu's discovery requests. (*See* Motion to Compel [DE 20]). Following a hearing, Judge Gold granted Tiramisu's Motion, and entered an Order providing, in relevant part, that: "Defendant shall serve its amended discovery responses as stated in Plaintiff's Motion to Compel [*See* DE 20] . . . Defendant is advised that failure to comply with this Order could result in sanctions, which may include financial penalties or entry of a default judgment." (*See* Order Granting Motion to Compel [DE 25]).

Clever Imports provided supplemental discovery, which Tiramisu considered inadequate. Tiramisu filed a Motion for Contempt and Sanctions. (*See* Motion for Contempt

2

[DE 28]).  Three days later, counsel for Clever Imports filed a Motion to Withdraw as Clever

Imports' attorney.  (*See* Motion to Withdraw [DE 31]).[1]  Following a status conference,

Judge Gold granted counsel's Motion to Withdraw, and ordered Clever Imports to secure

new counsel on or before February 19, 2009.  (*See* Order Granting Motion to Withdraw [DE

38]).  The Order also stated that

> Defendant's corporate representative failed to appear without good cause,
> despite my prior Order Requiring attendance [DE 35]. . . . The Court will
> entertain a Motion for Default in the event Defendant does not secure counsel
> by this time.  In light of the pending Motion for Sanctions against Defendant
> and Defendant's failure [to] cooperate in discovery matters, a heightened
> showing of good cause is required for any extension of time to secure new
> counsel.

*Id*.

Clever Imports did not secure new counsel by February 19, 2009, nor did it seek an

extension of time in which to do so.  Tiramisu filed a Motion for Default Judgment on

February 23, 2009, which was granted on February 25, 2009.  (*See* Order Granting Motion

for Default Judgment [DE 40]).  Two days later, on February 27, 2009, new counsel filed a

Notice of Appearance on behalf of Clever Imports, and subsequently filed a Motion to

Vacate the default judgment against Clever Imports.  (*See* Motion to Vacate [DE 43]).  After

the Motion to Vacate was fully briefed, Judge Gold denied the motion, finding that Clever

Imports had not shown good cause why its new counsel did not file a Notice of Appearance

---

[1] Counsel for Clever Imports had filed an earlier motion to withdraw, which was denied
without prejudice by Judge Gold because counsel had failed to serve the motion on his client.  The
motion to withdraw filed following the motion for contempt was therefore counsel's second attempt
to withdraw as attorney for Clever Imports.

until February 27, 2010.  (*See* Order Denying Motion to Vacate [DE 49]).  Judge Gold noted

that Clever Imports had been aware of the deadline,

> but failed to present any explanation for the delay or demonstrate that it made
> any effort to secure counsel leading up the deadline, except for a belated
> affidavit [DE 48] from Defendant's corporate representative that explained
> new counsel was reluctant to be retained until he received confirmation of his
> admittance to the Bar of this Court.

*Id*.  Judge Gold went on to explain that under existing case law, Clever Imports' actions

simply did not constitute excusable neglect, and noted that he had specifically permitted

Clever Imports to seek additional time if it needed, but they had failed to so move.  *See id*.

Clever Imports moved for reconsideration, but its request was denied.  (*See* Order Denying

Motion for Reconsideration [DE 53]).

Prior to Judge Gold's denial of Clever Imports' Motion for Reconsideration, Tiramisu

filed the motion at issue here, for permanent injunction, money damages, and attorneys' fees.

(*See* Motion for Damages and Attorneys' Fees [DE 51]; *see* Memorandum in Support of

Motion for Attorneys' Fees [DE 55]).  Judge Gold referred to matter to me for a Report and

Recommendation.  (*See* Order of Referral [DE 56]).[2]  Clever Imports has never filed a

response to the Motion.

---

[2] The Motion had been referred earlier, but an Amended Order of Referral was entered on
April 6, 2010 to clarify that my Report and Recommendation would encompass all relief requested
in the Motion [DE 56].

## II.  ANALYSIS

### A.      The Default Judgment

"A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  "'A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations.'" *Id.* (quoting *Nishimatsu*, 515 F.2d at 1206).  Thus, Clever Imports is deemed to have admitted all the allegations of Tiramisu's Complaint, so long as those allegations are well-founded.

In his Order denying Clever Imports' Motion for Reconsideration, Judge Gold specifically stated:

> So that my reasoning for entering default judgment is fully reflected in the record, I note that before entering a default judgment, a court must ensure that the well-pleaded allegations in the complaint must actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought. *Tyco Fire & Sec. LLC v. Alcocer*, 2007 WL 542583, at *2 (11th Cir. Feb. 22, 2007).  My review of Plaintiff's Complaint [DE 1] shows there are well-pleaded allegations of violations of the Lanham Act.

[DE 53].  Indeed, a review of Tiramisu's Complaint makes clear that it has sufficiently alleged that Clever Imports has infringed on its trademark, and Clever Imports is now bound

by those allegations.[3]

"Under § 32 (a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), liability for trademark infringement occurs when a person 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Petmed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (quoting 15 U.S.C. § 1114 (1) (a)).  To prevail on a claim of trademark infringement, then, a plaintiff must plead and prove that:  (1) it has a registered mark; (2) the defendant, without permission, used its mark in commerce; and (3) the defendant's mark is likely to cause consumer confusion.  *Id*. (citing *Int'l Cosmetics Exch., Inc., v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242 (11th Cir. 2002); *Frehling Enter., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330 (11th Cir. 1999)).

In its Complaint, Tiramisu alleges that:  (1) it owns the registered "Tiramisu" mark for liquor; (2) Clever Imports distributed a liquor called "Europa Tiramisu," and did so without Tiramisu's permission; and (3) the use of "Europa Tiramisu" on a competing brand of liquor is likely to cause consumer confusion between the two products.  (*See Compl*. at ¶¶ 19-21).  These allegations state a claim for trademark infringement, and are consequently deemed admitted by virtue of the default.

---

[3] Notably, Clever Imports chose not to respond to the instant Motion on any of the issues raised.  Not only is Clever Imports bound by the default judgment against it, but this motion may be granted in favor of Tiramisu pursuant to Local Rule 7.1C, which provides:  "Each party opposing a motion shall serve an opposing memorandum of law no later than ten days after service of the motion as computed in the Federal Rules of Civil Procedure.  Failure to do so may be deemed sufficient cause for granting the motion by default."

B.      **Injunctive Relief**

The standard for permanent injunctive relief in this circuit is set forth in *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008), where the Eleventh Circuit explained:

> a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

The court further reasoned that

> in "ordinary trademark infringement actions . . . complete injunctions against the infringing party are the order of the day." *SunAmerica Corp.*, 77 F.3d at 1336. The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks – even in cases in which more than one entity has a legal right to use the mark. *Id.* at 1336-37.

*Id.* at 1209 (quoting *SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d 1325 (11th Cir. 1996)).

The Eleventh Circuit explained that it has repeatedly held that "'a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm.'" *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx. 180, 191 (11th Cir. 2005) (brackets in original) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998)). The court also pointed out that other circuits are in accord on this issue, citing cases from the First, Second, Third, Seventh, Eighth and Ninth Circuits.

The Eleventh Circuit has also noted that "our prior cases do extend a presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim."  *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008). In its opinion, the court  referenced its earlier decision in *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989), in which it stated, "it is generally recognized in trademark infringement cases that (1) there is not adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm."[4]

Here, Tiramisu received a default judgment that Clever Imports had infringed upon its protected trademark.  It has, therefore, achieved actual success on the merits of its infringement claim against Clever Imports.  Moreover, as Judge Gold noted, Tiramisu's Complaint contains well-pleaded allegations that Clever Imports' trademark infringement created a substantial likelihood of confusion.  It is undeniable that the names "Tiramisu" and "Europa Tiramisu" are quite similar, particularly when the two names are used on the same type of product.  Additionally, Tiramisu alleges in its Complaint that Clever Imports sells its Europa Tiramisu liquor in the same channels of trade in which the genuine Tiramisu liquor is sold, thereby causing confusion among the consuming public.  (*See Compl.* at ¶¶ 15, 21).

---

[4] While *N. Am Med. Corp.* and *Tally-Ho* deal with preliminary, rather than permanent injunctions, the analysis is the same.  The only difference is that for a preliminary injunction, a plaintiff must establish a likelihood of success on the merits, whereas a permanent injunction requires actual success on the merits. *Touchstone v. McDermott*, 234 F.3d 1133, 1157 (11th Cir. 2000).  That distinction does not alter the outcome in this case.

Taking those allegations as true, the Court concludes that Tiramisu has demonstrated a substantial likelihood of confusion.  Under established case law, therefore, Tiramisu's uncontroverted allegations establish the first two prongs required for injunctive relief: it has suffered irreparable harm, and this harm cannot be remedied solely by money damages, or other traditional remedies at law.

The third prong requires the Court to balance the hardships of the plaintiff and the defendant and consider whether injunctive relief is warranted.  Tiramisu asserts that it has suffered great hardship due to Clever Imports' infringing actions.  Tiramisu stands to lose the goodwill of its customers so long as Clever Imports continues to distribute Europa Tiramisu, as consumers could easily believe the products come from the same manufacturer.  Should consumers decide that Europa Tiramisu is an unpalatable product, they might stop purchasing the original Tiramisu product.  If Clever Imports was allowed to continue its infringing conduct, Tiramisu, having no control over the quality of Europa Tiramisu, would be at the mercy of Clever Imports to maintain its own customer base.

The facts here are comparable to those in *Gaffigan v. Doe*, 689 F. Supp. 2d 1332 (S.D. Fla. 2009), where the court found the balance of hardships test clearly favored the plaintiff. In *Gaffigan*, the court reasoned that the plaintiff had "expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the [trademark] and the genuine goods bearing [the] marks."  *Id*. at 1341.  In contrast, the infringing defendant had no right to use the mark, and therefore could suffer no legitimate

hardship by being forced to stop that which it had no right to do. *Id*. The court ultimately determined that the potential harm to the plaintiff through loss of goodwill outweighed any conceivable harm to the defendant. *Id*.

The same decision is warranted here. Tiramisu is at risk of losing customer goodwill, and Clever Imports has no right to use the Tiramisu mark. Requiring it to stop using the mark, therefore, cannot cause a hardship for Clever Imports that could outweigh the harm suffered by Tiramisu through the illegal use of its mark. The third prong for injunctive relief is therefore satisfied.

The final element in an injunctive relief analysis requires the consideration of the public interest: will the public be well or ill served by the issuance of an injunction? Tiramisu contends, and the Court agrees, that this prong, too, weighs in favor of injunctive relief. As one court in this district explained, "[i]n trademark cases, 'the public as a whole has a paramount interest not to be confused by defendant's infringement.'" *Nailtiques Cosmetic Corp. v. Salon Sciences Corp.*, 41 U.S.P.Q. 2d 1995, 1999 (S.D. Fla. Jan. 10, 1997) (quoting *Council of Better Business Bureaus, Inc. v. Better Business Bureau of So. Fla., Inc.*, 200 U.S.P.Q. (BNA) 282, 301 (S.D. Fla. 1978)). And the Eleventh Circuit points to "a long line of trademark cases in which this Court has explained the 'public interest' relevant to the issuance of a permanent injunction is the public's interest in avoiding unnecessary confusion." *Angel Flight*, 522 F.3d at 1209. Because the use of the Tiramisu mark on a product not manufactured by Tiramisu may well lead to confusion in the marketplace, the

10

public interest is best served by Clever Imports being prevented from using the mark.

Tiramisu has satisfied all the prongs necessary to succeed in its claim for injunctive relief.  Accordingly, this Court recommends that a permanent injunction be issued against Clever Imports, enjoining it from using Tiramisu's registered trademark.

### C.    Damages

Tiramisu next seeks money damages from Clever Imports to remedy the harm it has suffered from the infringing use of its mark.  The Lanham Act provides that a successful plaintiff may recover from the defendant "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  "[T]he law in this Circuit is well settled that a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits under § 35 of the Lanham Act."  *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988).  A plaintiff shall be entitled to a defendant's profits if any of three circumstances exist: "(1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct."  *Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 Fed. Appx. 899, 902 (11th Cir. 2007).

Tiramisu does not allege actual damages sustained through Clever Imports' infringing use of its mark.  Instead, it seeks to recover all profits earned by Clever Imports from the sale of Europa Tiramisu liquor on the grounds that Clever Imports' conduct was willful and deliberate, and cites *Petmed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213 (S.D.

11

Fla. 2004) in support.  In *Petmed*, the court found willful infringement under circumstances comparable to those at hand.  Petmed Express, a pharmacy selling medicines for pets, owned the registered marks "Petmed Express, Inc.," and "1888PetMeds."  *Id*. at 1220.  Defendant MedPets sold pet care products through its website, linked to "www.MedPets.com" and "www.1888MedPets.com."  *Id*.  When Petmed became aware of the infringement of its mark, it sent several cease and desist letters to MedPets, but MedPets refused to stop using the infringing mark.  *Id*.  The court held that MedPets' conduct was willful for three reasons: (1) MedPets intended to confuse the public through the use of confusingly similar mark; (2) MedPets continued to use the mark even after Petmed notified them that they were infringing on a registered mark[5]; and (3) MedPets' default created an inference of willfulness.[6]

Clever Imports' conduct here is, in one respect, different than the defendant's in *Petmed*.  In this case, there is nothing to suggest Clever Imports initially intended to confuse

---

[5]  *Accord Arista Records v. Becker Enters.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (finding willfulness when "Plaintiffs repeatedly contacted Defendants regarding their infringing conduct and Defendants ignored Plaintiff's communications"; *Louis Vuitton Malletier & Oakley v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002), ("[w]illfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice").

[6]  *Accord  Arista Records*, 298 F. Supp. 2d at 1313 ("this Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default"); *Microsoft Corp. v. Wen*, No. C 99-04561 MEJ, 2001 WL 1456654 at *5 (N.D. Cal. Nov. 13, 2001) (default alone established willfulness based on allegations of willfulness in plaintiff's complaint); *Sony Music Entertainment v. Cassette Prods.*, No. 92-4494 (JCL), 1996 WL 673158 at *5 (D.N.J. Sept. 30, 1996) (defendant admitted plaintiff's claim that infringements were willful by virtue of his default); *Fallaci v. The New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (inference of willfulness drawn by "defendant's failure to appear and defend this action," particularly in light of plaintiff's allegation of willfulness).

the consuming public by using a mark similar to the registered "Tiramisu" mark.  Indeed, it is entirely possible that Clever Imports had no idea there was a registered mark called "Tiramisu," or that it was used in the liquor industry.  In fact, Tiramisu does not even allege that Clever Imports set out to confuse the public by creating an intentionally similar brand name.

In all other regards, however, the circumstances are quite similar.  When Tiramisu discovered Clever Imports was distributing a liquor called Europa Tiramisu, it immediately sent numerous cease and desist letters to Clever Imports.  Clever Imports refused to comply with Tiramisu's demands, even after being put on notice that it could be liable for trademark infringement.  Here, as in *Petmed* and numerous other cases, willfulness may be inferred by the fact that Clever Imports deliberately continued to distribute Europa Tiramisu, ignoring Tiramisu's demands.  Moreover, after the lawsuit was initiated, Clever Imports stated by way of interrogatory that it was no longer distributing Europa Tiramisu liquor.  Subsequent document production, however, revealed that Clever Imports distributed numerous cases of the liquor after the date of the interrogatory in which it claimed to have ceased.  Such behavior, once again, creates an inference of willful infringement.

The facts here are also comparable to those in *Petmed* by virtue of the default judgment against Clever Imports.  While Clever Imports did not, as did the defendant in *Petmed*, simply refuse to appear, it repeatedly failed to meet its obligations in this case.  From the start of discovery following the denial of its Motion to Dismiss, Clever Imports engaged

in discovery violations, causing Tiramisu to move to compel proper responses. Clever Imports' representative did not appear before the Court for a status conference, in spite of an Order by Judge Gold requiring him to appear. Following the withdrawal of counsel, Clever Imports did not secure substitute counsel in the time designated by Judge Gold, and did not request an extension of time in which to do so. Consequently, through its failure to abide by Court Orders and a failure to properly participate in the litigation, Clever Imports received a default judgment. Moreover, Clever Imports has chosen not to respond to this motion, and puts forth no argument whatsoever in opposition to the relief requested by Tiramisu. Viewed as a whole, Clever Imports' conduct creates an inference of willfulness, thereby entitling Tiramisu to any profits garnered through Clever Imports' infringing conduct.

In order to establish the amount of profits to be disgorged, a plaintiff must establish the infringer's gross sales of the product; it is then up to the defendant to refute that amount, and/or to proffer costs that should be deducted from the gross sales. *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1488 (11th Cir. 1987); *see Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582, 586 (5th Cir. 1980). Specifically, the Lanham Act provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 USC § 1117(a).

Here, Tiramisu has presented evidence that Clever Imports earned $53,375.00 in gross

14

sales of Europa Tiramisu liquor.   In response to Tiramisu's discovery requests, Clever Imports admitted that as of October 2, 2008, it had sold 533 cases of Europa Tiramisu, for a total of $39,957.  (*See* Motion for Attorneys' Fees, Ex. B-2 [DE 51-3]).  In addition, Clever Imports produced invoices dated after October 2, 2008, showing the sale of an additional 219 cases of Europa Tiramisu, totaling $13,440 in gross sales.  (*See id.* Ex. C [DE 51-4]). Tiramisu has therefore established the gross sales earned by Clever Imports though the sale of the infringing product in the amount of $53,375.00.

The burden then shifts to Clever Imports to present evidence of costs to be deducted from the gross sales.  However, Clever Imports has chosen not to respond to Tiramisu's motion, and has therefore presented no evidence of appropriate deductions from the $53,375.00.  Clever Imports also chose not to respond to certain of Tiramisu's discovery requests, whose answers could have provided a basis to establish proper deductions.  Without any response from Clever Imports, it has utterly failed to meet its burden to prove deductions from its gross sales.  Because the Lanham Act squarely places the burden on the infringer to prove deductions, "any doubts about the actual amount of gross sales or profits will be resolved against the infringing party." *Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1316 (S.D. Fla. 1998).  The Supreme Court explained that "[t]here may well be a windfall to the trademark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark.  But to hold otherwise would give the windfall to the wrongdoer." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203,

207 (1942).[7]

Numerous courts have held that "when a trademark plaintiff offers evidence of infringing sales and the infringer fails to carry its statutory burden to offer evidence of deductions, the plaintiff's entitlement to profits under the Lanham Act is equal to the infringer's gross sales." *WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 609 (7th Cir. 2008); *see Hospitality Int'l v. Mahtani*, No. 2:97CV87, 1998 WL 35296447 at *9 (M.D.N.C. Aug. 3, 1998) ("[i]f the defendant provides no evidence from which the Court can determine the amount of any cost deductions, the defendant's profits are usually held to be equal to the defendant's sales); *Joy Mfg. Co. v. CGM Valve & Gauge Co.*, 730 F. Supp. 1387, 1395 (S.D. Tex. 1989) ("[Defendant] failed to prove or offer to prove any elements of cost or deduction claimed; therefore, plaintiff is entitled to an award of the full amount of [defendant's] sales, …"); *Brand v. NCC Corp.*, 540 F. Supp. 562, 565 (E.D.Pa. 1982) (where defendant made no attempt to prove any cost deductions, "profits" were based upon gross sales revenues); *Pillsbury Co. v. Southard*, 682 F. Supp. 497, 500 (E.D. Okla. 1986) (where the infringer does not carry its burden to prove deductible costs, the corporation whose rights have been violated may be awarded all revenue for that year); *New York Racing Association, Inc. v. Stroup News Agency Corp.*, 920 F. Supp. 295, 301(N.D.N.Y. 1006) ("when a trademark

---

[7] *Mishawaka Rubber* was decided before the passage of the Lanham Act, and its holding is therefore superseded by the Lanham Act, 15 U.S.C. § 1117. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, No. CIV. A. 94-CV-7408, 2002 WL 27735 (E.D. Pa. Jan. 9, 2002). However, the reasoning in *Mishawaka Rubber* corresponds to the profits provision in the Lanham Act.

plaintiff offers evidence of infringing sales and the infringer fails to carry its statutory burden to offer evidence as to the costs of goods sold, then the profits to which the plaintiff is entitled under the Lanham Act are equal to the infringer's gross sales").  Accordingly, even though this amounts to a windfall for Tiramisu, I recommend that it recover the full amount of Clever Imports' gross sales of Europa Tiramisu, for a total of $53,375.00.

### D.      Treble Damages

Tiramisu seeks treble damages pursuant to 15 U.S.C. § 1117(a), which provides:

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

The Eleventh Circuit has noted that the damages provision in the Lanham Act "vests considerable discretion in the district court."  *Burger King Corp. v. Mason*, 710 F.2d 1480, 1495 (11th Cir. 1983).  The court explained that, "[g]uided by the principles of equity, the court may award the defendant's profits. Additional extraordinary relief such as treble damages and attorney's fees are available under the statute *if* the district court believes that such an assessment would be just." *Id*. (emphasis in original).  The Eleventh Circuit has also stated that an enhanced damages award "'is discretionary, but it may not be punitive, and must be based on a showing of actual harm.'"  *Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 Fed. Appx. 899, 903 (11th Cir. 2007) (quoting *Babbit Electronics. Inc. v. Dynascan*

*Corp.*, 38 F.3d 1161, 1183 (11th Cir. 1994)).

Tiramisu claims it is entitled to treble damages because it has shown actual harm, "including harm to the goodwill and business reputation symbolized by the TIRAMISU mark." (Motion for Attorneys' Fees at [DE 51] at p. 11). Tiramisu asserts that because its damages are difficult to quantify, because Clever Imports' infringement was willful, and because Clever Imports was not fully cooperative in discovery, that treble damages are appropriate here. I disagree and conclude, for several reasons, that treble damages are not warranted. First, Tiramisu will receive a windfall (thanks to Clever Imports' failure to produce proof if its costs) if awarded the amount of Clever Imports' gross sales. Second, although Tiramisu states in its moving papers that it has suffered actual harm, it has made no showing of this. Finally, treble damages in this case would go beyond compensation, and would constitute punitive damages, which is not permitted. *Optimum Techs,* 217 Fed. Appx. at 903.

Because enhanced damages are discretionary, it is instructive to review cases in which treble damages are awarded, and in which they are not. Under circumstances that were quite different from those before this Court, the court in *Rain Bird v. Taylor*, 665 F. Supp. 2d 1258, 1271 (N.D. Fla. 2009) awarded treble damages in an infringement case. In *Rain Bird*, the defendant started a business to compete with a well established irrigation business, known as Rain Bird. *Id*. at 1264. The defendant offered the same services in the same geographical locations, and he named his business AAA Rainbird Connection. *Id*. The defendant

admitted that he chose the name for his business based on its similarity to the protected name, Rain Bird, and further admitted that the choice of name had caused actual confusion in the marketplace.  *Id*. at 1271.   Finally, the defendant admitted that he had profited from his infringing use of the trademark.  *Id*.

A similar comparison is offered by the award of treble damages in *Levi Strauss & Co. v. Sunrise Int'l Trading*, No. 93-6547-CIV-FERGUSON, 1995 U.S. Dist. LEXIS 21949 (S.D. Fla. July 28, 1995).  In *Levi Strauss*, several defendants conspired to distribute counterfeit Levi jeans as though they were the real, trademarked product.  The defendants' infringing actions caused actual confusion in the marketplace, as the counterfeit Levi jeans were sold to consumers who believed they were buying the authentic item.  *Id*. at *7.  Moreover, the court found that each sale of the counterfeit jeans represented one sale lost by the plaintiff. *Id*. at *8.  The court determined that, given the willfulness of the defendants' infringement, the loss of sales to the plaintiff, and the lack of any facts to mitigate the imposition of treble damages, an award of treble damages was the appropriate relief.  *Id*. at *10.

The facts at hand are distinguishable from *Rain Bird* and *Levi Strauss*.  In terms of intent, Clever Imports, as the distributor rather than manufacturer of "Europa Tiramisu," did not come up with that product name.  There is no evidence in the record that either Clever Imports or the manufacturer were aware that a trademarked brand of Tiramisu liquor existed, and there is nothing to suggest that the name was specifically chosen to create consumer confusion and profit from the established company's goodwill, as happened in *Rain Bird*.

19

Nor is there any evidence that Clever Imports attempted to pass off its product as the trademarked Tiramisu liquor, as was the case in *Levi Strauss*.

The facts here also differ from *Rain Bird* and *Levi Strauss* as to the existence of actual confusion in the marketplace, and lost profits to the plaintiff.   In both *Rain Bird* and *Levi Strauss*, the evidence was clear that consumers were confused; consumers believed they were receiving service from the trademarked Rain Bird company, and that they were purchasing authentic Levi Strauss jeans.  In this case, however, Tiramisu produced no evidence of actual consumer confusion, or that it lost any business or suffered actual damages because of Clever Imports's distribution of Europa Tiramisu.  Tiramisu only speculates that there may have been confusion, and that it may have lost business.

In cases with facts more comparable to those at hand, courts have declined to award treble damages, in spite of the fact that the infringement was shown to be willful and deliberate.  For example, the court in *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.* reasoned that because the original damage award adequately compensated the plaintiff, enhanced damages were unnecessary:

> Plaintiff argues that Defendant's unlawful actions were willful and warrant additional sanctions to ensure that the Defendant "does not profit from its wrongdoing and to insure that it is deterred from future infringement." (Pl.'s Mot. at 7.) Plaintiff never argues that the jury's actual damage award was erroneous or insufficient. Instead, the Plaintiff contends that the actual damage award should be increased because of Defendant's conduct after the verdict in connection with continued sales of the offending product. Having considered Plaintiff's motion and Defendant's response, I determine, in my discretion, not to enhance damages under the statute. . . . I am not persuaded by [plaintiff's]

argument.  I find that Plaintiff was adequately compensated by the jury's verdict, as modified by this Order.

No.04-cv-00329-WYD-CBS, 2008 WL 269451 at *5 (D. Colo. Jan. 29, 2008).

In an earlier case, the Fifth Circuit remanded a doubled damages award in an infringement action back to the district court for further factual findings.  *Boston Professional Hockey Asso. v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 77 (5th Cir. 1979). The court explained,

> The trial court seemingly doubled damages because Dallas Cap violated an injunction imposed by the court and also failed to comply with its obligation to answer pretrial discovery completely. These are examples of conduct for which other, appropriate sanctions were readily available. We would be reluctant to approve increased damages intended solely as punishment for conduct unrelated to the trademark infringement or to the actual damages caused by it. On the other hand, we might agree that increased damages may be justified by defendant's withholding or misrepresenting available sales records, which would have the effect of making much more difficult, if not impossible, plaintiffs' proof of damages or profits. Certainly, an infringer should not be allowed to limit a trademark owner to injunctive relief by "stonewalling" the question of infringing sales.

The instant case is comparable to *Cache La Poudre* and *Boston Professional Hockey* as to the propriety of a treble damage award.  I believe that the damages award I have recommended – the total of Clever Imports' gross sales – more than adequately compensates Tiramisu.  As in *Cache La Poudre*, the infringement by Clever Imports was willful. However, as noted, Tiramisu has not provided any evidence that it suffered actual harm. Although the Lanham Act provides for damages in the absence of a show of actual harm, if Tiramisu could show, for example, that it lost profits in excess of the award, that might be

21

grounds for the Court, in its discretion, to increase the award.  There is no such justification here for enhanced damages.

Also, comparable to the plaintiff in *Boston Professional Hockey*, Tiramisu seeks treble damages based, in part, on Clever Imports' behavior during discovery.  However, while Clever Imports engaged in certain dilatory discovery tactics, it did not prevent Tiramisu from proving Clever Imports' gross sales.  In fact, the information not produced by Clever Imports only prevented the Court from deducting costs from Clever Imports' overall sales, which gives a windfall to Tiramisu.  As in *Boston Professional Hockey*, the Court should not impose enhanced damages for behavior separate from the infringing conduct itself, and for which other sanctions exist.  Indeed, Clever Imports has already had a default judgment entered against it as a penalty for its behavior before the district court; to then enhance the damages against it for the same reason hardly seems fair.

The statute contemplates enhanced or reduced damage awards at the sound discretion of the court.  The statute explicitly states that any damages award should be "just, according to the circumstances of the case," and that any damage award must "constitute compensation and not a penalty."  15 U.S.C. § 1117 (a).  Given all the facts and circumstances of this case, I believe that to award enhanced damages in this fairly straight-forward infringement case would amount to a punitive award, which is barred by the Lanham Act.  Accordingly, I recommend that  Tiramisu's request for treble damages be denied.

> **E.     Attorneys' Fees and Costs**

### 1.    Entitlement to Attorneys' Fees

Tiramisu seeks $81,925.50 in attorneys' fees, and costs in the amount of $4,176.10.

(*See* Memorandum in Support of Motion for Attorneys' Fees [DE 55] at p. 2).  The Lanham

Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the

prevailing party."  15 U.S.C. § 1117(a).  The statute does not define the term "exceptional,"

but the Eleventh Circuit has repeatedly held that an "exceptional" case is one which is

"malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith

exists."  *Welding Servs. v. Forman*, 301 Fed. Appx. 862 (11th Cir. 2008); *Optimum Techs.,*

*Inc. v. Home Depot U.S.A., Inc.*, 217 Fed. Appx. 899, 903 (11th Cir. 2007) ("An exceptional

case is 'where the infringing party acts in a malicious, fraudulent, deliberate, or willful

manner.'"); *Burger King v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (same).

In a thorough analysis of what constitutes an exceptional case, one court reasoned:

> In interpreting the language and legislative history of § 1117(a), courts have
> found that Congress had two classes of litigants in mind when it enacted the
> fee provision of section 35.  First, the legislature envisioned "make whole"
> compensation for certain victims of infringement; second, Congress
> endeavored to afford protection to defendants "against unfounded suits
> brought by trademark owners for harassment and the like."

*Vital Pharms., Inc. v. Am. Body Bldg. Prods.*, LLC, 510 F. Supp. 2d 1043, 1045 (S.D. Fla.

2007) (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 248 U.S. App. D.C.

329, 771 F.2d 521, 524 (D.C. Cir. 1985)).  While the American rule generally does not

provide attorneys' fees for a prevailing party, the "make whole" concept makes particular

sense in trademark actions, where fees are provided by statute.  When a company goes to the trouble to register a mark, it reasonably expects certain protections.  When it is forced to engage in litigation to ensure those protections, the purpose of trademark registration is diluted.  As one court put it,

> Given this intentional infringement without regard for the rights of Plaintiff, the Court finds it appropriate to award attorney's fees to Plaintiff, who would not have incurred the legal fees in bringing this suit to protect his property rights were it not for the wilful conduct of Defendants.  Accordingly, considering the facts of this case, the Court determines that an award of attorney's fees pursuant to the Lanham Act is warranted.

*Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046-CIV-HUCK/O'SULLIVAN, 2009 U.S. Dist. LEXIS 116770 at *50 (S.D. Fla. Apr. 28, 2009).

In this case, there is no dispute that Tiramisu owns the registered "Tiramisu" mark for liquor.  When it discovered Clever Imports was distributing Europa Tiramisu liquor, it contacted Clever Imports outside of court, and sent a cease and desist letter.  When Clever Imports ignored the letter, Tiramisu tried again, before initiating a lawsuit.  Tiramisu attempted to resolve the issue without resorting to costly litigation, but Clever Imports refused to cooperate.  During the courses of the lawsuit, Tiramisu was forced to file motions to compel discovery, incurring additional unnecessary expense.  Moreover, Clever Imports continued to distribute the infringing product even after the initiation of the lawsuit, even after it had stated in discovery responses that it had ceased such behavior.  Given the willfulness of Clever Imports' conduct, it is appropriate to award attorneys' fees and costs

to Tiramisu.

### 2.      Reasonable Fees

The only issue that remains is to determine a reasonable fee amount for the services provided by counsel for Tiramisu.  When calculating such an award, courts generally multiply the number of hours reasonably expended, by a reasonable hourly rate, resulting in a "lodestar" amount.  *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  Tiramisu filed detailed time records, along with an affidavit of an attorney practicing in a law firm unconnected to this case, attesting to the reasonableness of the fees requested.

### a.      Reasonable Hourly Rate

Numerous attorneys worked on this case:  lead counsel, Daniel Christus, billed at $600.00 to $645.00 per hour;[8] local counsel, Steven Siff, billed at $675.00 per hour. Additional counsel include Shon Lo, at $265.00 per hour; Monique Morneault, at $390.00 per hour; Mike McMillan, at $140.00 per hour; Adele Frankel, at $280.00 per hour; Jennifer Mendoza, at $225.00 per hour; Leonard Caramela, at $205.00 per hour; Jacqueline Titus, at $205.00 per hour; Justin Uhlemann, at $440.00 per hour; and John Duval, at $150.00 per hour.

A reasonable hourly rate is the prevailing market rate in the legal community for

---

[8]At the beginning of the case, Christus billed at $600.00 per hour, but as of September, 2008, his rate was raised to $645.00 per hour.

similar services by lawyers of reasonably comparable skills, experiences and reputation. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

"The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1303. In evaluating the reasonableness of rates sought by Tiramisu, this Court has reviewed the qualifications of counsel, the affidavit of Michael Joblove, the detailed time records submitted by counsel, and the record in this action.

Based on this review, and this Court's own judgment and expertise, I find that the following rates are reasonable for each attorney who worked on this case:

Daniel Christus: $425.00

Steven Siff: $425.00

Shon Lo: $265.00

Monique Morneault: $325.00

Mike McMillan: $140.00

Adele Frankel: $280.00

Jennifer Mendoza: $225.00

Leonard Caramela: $205.00

Jacqueline Titus: $205.00

Justin Uhlemann: $325.00

John Duval: $150.00

### b.      Hours Reasonably Expended

The second half of the lodestar calculation involves a determination of whether the hours billed were reasonably expended.  While this Court has no criticism of how Tiramisu's counsel chose to represent their client, when a plaintiff seeks to recover those fees from a defendant, the Court must examine then with a close eye.  In this context, I have made a careful review of the billing records submitted by Tiramisu's counsel, and I have reservations as to the reasonableness of some of the hours expended.

The firm handling this case is a large, international law firm, employing numerous attorneys with varying levels of experience and expertise.  Regardless of that fact, lead counsel appears to have spent an inordinate amount of time engaged in legal work that could have been handled by a junior associate at a lower hourly rate.  For example, lead and local counsel –  the highest paid attorneys who worked on the file – spent four hours preparing a draft of the parties' joint scheduling report, which proposes a schedule for the case to follow, and does not require complex legal analysis or strategy. [9]

In spite of a wealth of available associates, lead and local counsel spent over five hours reviewing discovery responses and drafting a routine motion to compel,[10] and lead counsel (along with another senior attorney billing at $440 per hour) spent eight and one half hours drafting a motion for contempt that essentially recounts what Clever Imports failed to

---

[9] *See* Time/Cost Detail Report, [DE 55-4], p. 3, entries dated June 13 and 16, 2008.

[10] *See id.*, p. 7-8, entries dated 10/2/08, 10/20/08, 10/28/08, 10/29/08, 11/5/08, and 11/29/08.

do.[11]  Again, senior legal talent was not required to draft these documents.  Lead counsel also billed three hours of time to prepare a one-page motion for default judgment, which simply stated that Clever Imports had failed to follow court orders and retain new counsel.[12]  Lead counsel prepared a response in opposition to a motion to vacate default judgment for five and one half hours,[13] and prepared a response in opposition to a motion for reconsideration for four hours.[14]  Neither of these responses require specialized knowledge of trademark law. Although an associate spent over 22 hours researching and drafting the motion currently before this Court, lead counsel billed 10 hours for the same work.[15]  While lead counsel must, of course, review memoranda prepared by junior staff, 10 hours seems excessive in the context of motion to recover those fees.

Because the top-salaried counsel performed hours of legal work that could have been done by a senior associate, the Court recommends that certain deductions be made from the hours spent by Christus, Siff, and Uhlemann.  For those tasks, a reasonable rate of $300.00 per hour should be awarded, rather than the much higher pay rate earned by the lead

---

[11] *See id.*, p. 9, entries dated 1/14/09, 1/15/09, 1/16/09.

[12] *See id.*, p. 10, entry dated 2/23/09.

[13] *See id.*, p. 12, entries dated 3/11/09, 3/12/09.

[14] *See id.*, p. 14, entry dated 4/14/09.

[15] *See id.*, p. 11, entries dated 2/26/09, 2/27/09, 3/9/09.

attorneys, as follows:[16]

| Attorney | Task | Hours |
|---|---|---|
| Christus | Scheduling Report | 3.5 |
| Christus | Motion to Compel | 3 |
| Christus | Motion for Contempt | 5 |
| Christus | Motion for Default Judgment | 3 |
| Christus | Response to Motion to Vacate Default Judgment | 5.5 |
| Christus | Response to Motion for Reconsideration | 4 |
| Christus | Motion for Injunction, Damages, and Fees | 5[17] |
| Siff | Motion to Compel | 2.8 |
| Uhlemann | Motion for Contempt | 3.5 |

Making the recommended adjustments, reasonable billing would appear as follows:

| Attorney | Hourly Rate | Hours | Total |
|---|---|---|---|
| Christus | $425.00 | 56.3 | $23,927.50 |
| Siff | $425.00 | 6 | $2,550.00 |
| Lo | $265.00 | 44.1 | $11,686.50 |

---

[16] For clarity, as an example, the Court is recommending that the 3.5 hours spent on drafting the scheduling report not be billed at Christus's rate of $425.00 per hour; instead, those 3.5 hours should be billed at $300.00. Similarly, the Court recommends a $300.00 per hour fee rate for the other hours listed in this table.

[17] The court recommends that half of the hours spent by Christus on the motion be compensated at the $425.00 rate, and half at the $300.00 rate.

29

| Morneault | $325.00 | 15.9 | $5,167.50 |
|---|---|---|---|
| McMillan | $140.00 | .3 | $42.00 |
| Frankel | $280.00 | 2.05 | $1,148.00 |
| Mendoza | $225.00 | 4.7 | $1,057.50 |
| Caramela | $205.00 | 3.1 | $635.50 |
| Titus | $205.00 | .3 | $61.50 |
| Uhlemann | $325.00 | 0 | $0.00 |
| Duval | $150.00 | .5 | $75.00 |
| Reasonable Senior Associate Rate | $300.00 | 35.3 | $10,590.00 |
| | | | $56,941.00 |

I believe the reasonable attorneys' fees for this case total $56,941.00.  However, the billing records reveal that attorney Caramela billed for certain clerical matters.[18]  Tasks such as document "preparation," scanning, converting to PDF, attaching to emails, preparing file jackets, and filing should not be billed at a rate of over $200.00 per hour.  *Gates v. Barnhart*, 325 F. Supp. 2d 1342, 1348 ("tasks of a clerical nature are not compensable as attorney's fees"); *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) (work that is clerical or secretarial in nature, such as gathering, copying, mailing and refiling documents, is not separately recoverable).  The time records indicate that the person who performed the clerical duties also performed legal tasks; however, because the time entries do not separate the clerical from the non-clerical tasks, it is impossible to determine

---

[18] *See* Time/Cost Detail Report [DE 55-4], pp. 5-6, entries dated 8/4/08, 8/5/08, 8/6/08.

exactly how much time was spent on recoverable functions.   The Court therefore recommends deducting half of the amount billed for legal services that were intermingled with clerical duties.   The billing records indicate a total of 3.1 hours billed at a total of $635.50; the deduction comes to $317.75, further reducing the total amount of fees to be awarded to $56,623.25.

### 3.     Costs

TIramisu seeks to recoup $4,176.10 in costs.   (*See* Time/Cost Detail Report [DE 55-4] at pp. 15-19).   Generally, Federal Rule of Civil Procedure 54(d) authorizes an award of costs to prevailing parties as a matter of course, while 28 U.S.C. § 1920 enumerates the types of costs that may be recovered.  *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441-2 (1987); *Maris Distributing Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002).

Under 28 U.S.C. § 1920, only specific costs are permitted; they include:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title [28 USCS § 1923];

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 USCS § 1828].

Tiramisu has submitted a detailed list of costs that includes numerous items not permitted by section 1920,[19] including telephone calls, courier service charges, postage, computer research charges, and even parking. In fact, virtually all of the costs listed are non-recoverable. Of all the items listed, the only items approved by section 1920 are costs for photocopying, the *pro hac vice* filing fee for Daniel Christus, and a service of summons. As to the photocopies, costs are recoverable under section 1920 only when the copies are "necessarily obtained for use in the case." Tiramisu has made no showing that the photocopies charged to this case were necessarily obtained for use in the case, and the Court has no way of knowing what percentage, if any, of the photocopying charges are allowable under section 1920. Accordingly, the photocopying charges will not be taxed against Clever Imports. The Court recommends, however, taxing the $75.00 filing fee for Christus's appearance in this case, and the $70.00 charge for the service of summons. Tiramisu should therefore receive a total of $145.00 in costs.

## III. RECOMMENDATIONS

For the reasons stated above, it is recommended that Tiramisu's Motion for injunctive relief, damages, and attorneys' fees and costs [**DE 51**] be **granted in part and denied in**

---

[19] Tiramisu has not presented any contractual or statutory authority permitting costs to include items other than those listed in 28 U.S.C. § 1920; its costs are therefore restricted to the items listed in that statute.

**part** as follows:

   a.   A permanent injunction be issued against Clever Imports, enjoining it from any future use of the Tiramisu mark.

   b.   Tiramisu be awarded $53,375.00 in damages against Clever Imports.

   c.   Tiramisu be awarded $56,623.25 in attorneys' fees, and $145.00 in costs.

## IV.  OBJECTIONS

Pursuant to Magistrate Rule 4(a), the parties may file written objections to this Report and  Recommendation with the Honorable Alan S. Gold no later than August 2, 2010. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein.  *See RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY SUBMITTED in chambers at Miami, Florida, this 19th day of July, 2010.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc:
The Honorable Alan S. Gold
Counsel of record